UNION TRUST CO. *v.* PRESTON NATIONAL BANK.

1. INDEMNITY — CONTRACT — CONSTRUCTION — ADVANCEMENTS — IN-
   TEREST—RIGHT TO RECOVER.
   Where an uncompleted electric railroad was sold at the price
   of a completed property, and the vendor agreed to complete it,
   and, to provide against possible failure, deposited with a trust
   company certain bonds to "fully cover the cost of comple-
   tion," and the purchaser subsequently assumed the duty of
   completing the road as provided in the contract, and ad-
   vanced funds as became necessary for that purpose, it was
   entitled to interest on the money from the date of advance-
   ment, to be paid out of the fund arising from the sale of the
   bonds, notwithstanding the account for the advancements
   was unliquidated in the sense that they were required to be
   proved or admitted.

2. SAME—INTEREST—WAIVER.
   The trust company holding the bonds as trustee, having been
   appointed receiver of a bank having a claim on the vendor's
   interest in the bonds, wrote as such receiver, to the pur-
   chaser of the road for permission to sell the bonds and offered,
   in consideration of assent, to consent to the allowance of in-
   terest on the purchaser's advancements. The purchaser re-
   plied, giving assent, and stated that the provision for interest
   should apply also to money in good faith advanced for pay-
   ment of coupons, and noting that the letter was written as
   receiver, stated that it was not in position to determine the
   rights of any of the claimants of the bonds after it had been
   fully protected. *Held*, that the correspondence did not show
   a waiver of the purchaser's right to be paid interest, or an
   undertaking on the part of the receiver, as such, to pay the
   interest.

3. PLEDGES—SALE OF PROPERTY—DISPOSITION OF PROCEEDS.
   The holder of collateral pledged as security for a debt, having
   undertaken in a court of equity to account to other creditors
   of its debtor who have succeeded by assignment to the bene-
   ficial interest in the collateral, subject to the payment of the
   debt secured, owes a duty to show that it has taken from the
   fund no greater sum than was secured by the deposit.

4. SAME—EVIDENCE—SUFFICIENCY.
   In such a case, it being made to appear that the debt secured,

with the interest reserved, has been paid, and that a further sum, which, treated as interest, is usurious, which is not a charge connected with the debt secured, which it is claimed the debtor, by a separate and distinct agreement made after his assignment of the collateral, promised to pay, has been added to the debt and, without direction of the debtor, paid out of the fund, the pledgee has failed in proof of right to subject the fund to such charge.

5. TRUSTS—TRUST FUNDS—INTEREST—LIABILITY OF TRUSTEE.

Where a trust company holding interest bearing bonds as trustee pursuant to a contract of indemnity, sells them with the consent of the parties to the contract, and mingles the money received with its general funds which it loans at interest, it is liable to the assignee of the indemnitor for interest at the legal rate on the money received from the time of its receipt until payment on the contract of indemnity.

6. SAME—ESTOPPEL TO CLAIM INTEREST.

A claim that the owners of the beneficial interest in the fund were estopped to claim interest at a higher rate than that customarily paid by banks on deposits by reason of their knowledge of the use made of the fund by the trust company and their failure to require the trust company to deposit the fund in court pending litigation over its ownership, is untenable.

Appeal from Wayne; Donovan, J.   Submitted November 8, 1905.   (Docket No. 102.)   Decided May 24, 1906.

Bill by the Union Trust Company against the Preston National Bank, the Union Trust Company, as receiver for the City Savings Bank, and the Detroit United Railway for an accounting.   From the decree rendered, defendants Preston National Bank and the Union Trust Company, receiver, appeal.   Modified.

By an agreement, made July 27, 1901, between the Detroit, Rochester, Romeo & Lake Orion Railway, of the first part, Henry Stephens and Frank C. Andrews, of the second part, and the Detroit United Railway, of the third part, a sale was agreed to of the properties of three electric railway companies and of the Detroit Construction Company to the Detroit United Railway for a consideration of

$1,400,000, payable in bonds to be dated August 1, 1901, bearing interest at the rate of 5 per cent., payable semi-annually, being a part of a series of $3,000,000 of bonds to be issued by said Detroit, Rochester, Romeo & Lake Orion Railway, the payment of the principal and interest of said bonds to be guaranteed by the Detroit United Railway. The construction and equipment of some of the property sold was incomplete, and the vendor and guarantors agreed " to complete and finish" the same in accordance with certain specifications, but at an expense of not more than $239,742.97. The contract contained this provision:

" Two hundred and fifty of said 1,400 bonds, being the consideration running to said vendor and guarantors, shall be placed in the hands of the Union Trust Company, of Detroit, as a guaranty of the fulfillment of the work designated and described in the foregoing paragraph and letters; and in case that said vendor and guarantors shall fail or neglect within a reasonable time to complete said work in accordance with said recommendations named in said letters, then the United Railway may finish said work, and charge the same to said vendor and guarantors, and shall be entitled to take from the hands of the trustee sufficient bonds to fully cover the costs of such completion."

By a supplemental agreement, dated August 8, 1901, made by the same parties, a new corporation, known as the Detroit & Flint Railway, was to be organized, and the bonds referred to issued by such corporation, to which corporation the transfer of all the properties mentioned in the first contract was to be made. The supplemental agreement was carried out. The bonds were issued by the Detroit & Flint Railway, and 250 of them, of the par value of $250,000, were deposited with the Union Trust Company, pursuant to said agreement. The construction and equipment, called for by the contract, proceeded under the direction and at the expense of those obligated in that behalf until April 19, 1902, when the Detroit United Railway gave notice that it would take upon itself the completion of the work, and it proceeded with the work

and completed it on December 30, 1903, at a cost later, and after some contest, agreed to by the parties in interest of $134,230.66, exclusive of any interest upon moneys expended. Twenty-three other of said bonds were deposited with the Union Trust Company to secure the surrender of certain outstanding shares of the stock of the Detroit, Rochester, Romeo & Lake Orion Railway.

December 5, 1901, Frank C. Andrews gave to the Union Trust Company his note for $400,000, drawing 4½ per cent. interest, and as security for the payment thereof pledged to said Union Trust Company 477 of the said Detroit & Flint Railway bonds and his equity in the said 273 bonds already referred to, and on January 6, 1902, upon the extension of time in which to pay a portion of said loan, pledged to said Union Trust Company as additional security 1,734 shares of the Detroit Journal Company and his equity in $205,000 of Grand Rapids, Holland & Lake Michigan Rapid Railway bonds. Under date of October 1, 1901, said Frank C. Andrews by a writing assigned and transferred to the City Savings Bank of Detroit all his right, title, and interest in $1,400,000 of bonds of the Detroit & Flint Railway, subject to the rights of the Union Trust Company. On December 1, 1901, by another writing he sold, assigned, and transferred to said City Savings Bank all his right, title, and interest in said bonds and in all collateral in possession of the said bank. Under date of December 18, 1901, by another writing he sold, assigned, and transferred to the City Savings Bank all his right, title, and interest in all bonds of the Detroit & Flint Railway and Grand Rapids, Holland & Lake' Michigan Rapid Railway, and authorized all moneys received above loans thereon to be paid to the City Savings Bank. No notice of these assignments or any of them came to the Union Trust Company until after the failure of the City Savings Bank, and until after said Trust Company had been appointed receiver of said bank.

February 5, 1902, said Andrews by a writing sold, assigned, and transferred to the Preston National Bank of

Detroit all his right, title, and interest in 473 bonds of the Detroit & Flint Railway, in 277 bonds of the Detroit & Flint Railway, and in $41,000 par value of the stock of the Detroit Journal Company, subject to the equity of the Union Trust Company, and under date of February 7, 1902, in writing sold, assigned, and transferred to the said Preston National Bank the same interest in the same collateral. Notice of these assignments was given to the Union Trust Company under date of February 7, 1902. The Union Trust Company sold collateral to pay the indebtedness of Andrews to it, receiving upon the sales made $409,690.64, at an expense of $135.47, leaving a balance in its hands, as reported, on May 31, 1902, of $1,304.76. May 27, 1902, the Union Trust Company, as receiver of the City Savings Bank, obtained an order from the circuit court for the county of Wayne, in chancery, in the matter of Maltz, commissioner of banking, complainant, against City Savings Bank, et al., defendants, authorizing it, by and with the consent of the Preston National Bank, to sell and dispose of any or all of the Detroit & Flint Railway bonds at a price which should net said receiver not less than 93 cents on the dollar and accrued interest. The consent of the Preston National Bank was secured.

Under date of August 5, 1902, a letter, signed "Union Trust Company, Receiver of the City Savings Bank," was written to the president of the United Railway, which refers to an interview of the day before, and expresses the opinion that the 250 bonds already referred to should be turned into money because there was at the time a reasonable demand for the bonds at 93 cents on the dollar and accrued interest, and containing this clause:

" In consideration of your assent to this sale, this company assent to the allowance of interest to you at the rate of 5 per cent. per annum upon any and all sums expended by you in fulfillment of the work designated and described in the said contract and loan, and which may be determined to be proper charges against said bonds and the proceeds thereof."

On the next day, August 6th, Mr. Hutchins, president of the Detroit United Railway, replied to this letter, stating that his company saw no objection to the sale of the bonds and the holding of the proceeds of said sale in lieu of the bonds. It is further stated in this letter:

" I note also what you say in relation to the allowance of interest at the rate of 5 per cent. per annum on any and all sums expended by the Detroit United Railway in the fulfillment of the work designated in said contract. This also includes the coupons for the payment of which we have made provision in good faith, and you will also see the justice of subjecting such bonds to any loss or damage sustained by the Detroit United Railway for failure to perform the work mentioned in said contract within a reasonable time.

" I notice that your letter is signed Union Trust Company, Receiver of the City Savings Bank. The Detroit United Railway is not in a position to determine the relative rights of any of the claimants for the said 250 bonds after it shall be fully protected as specified in said contracts, and it is not interested in the final ownership of so much of said bonds, or the proceeds thereof, as may remain in the hands of the Union Trust Co. after it, the Detroit United Railway, shall have been fully protected in its rights."

The Union Trust Company had already sold some of these bonds, and it proceeded with the sale of them, but none of the proceeds of such sales were turned over to the railway company nor demanded by said railway company, except as hereinafter stated. On March 11, 1903, including the $1,304.76, balance in its hands after paying its own debt, it had received $385,452.63.

April 10, 1903, the Union Trust Company filed the bill in this cause. It is called a bill of interpleader. It sets out that the Preston National Bank claims an interest in the moneys in its hands; that the receiver of the City Savings Bank also claims such an interest, and that the Detroit United Railway claims an interest in a part of said funds; that it is informed that defendant Frank C. Andrews may have an equity in the property. It makes the

Preston National Bank, the Union Trust Company, receiver, the Detroit United Railway, and Frank C. Andrews, parties defendant, asks that they may be required to set forth their claims, that an accounting be had, and that their respective rights may be determined. It did not offer in its bill to bring the fund into court, nor did it bring it into court. Later, and on June 1, 1903, the court ordered that the fund remain in the custody of complainant until termination of the suit or the further order of the court. To this bill, answers were filed by the Preston National Bank, the Union Trust Company, receiver, and the Detroit United Railway. There were intervening petitions and petitions by the parties not necessary to be noticed specifically. It is sufficient to say that no dispute as to the division to be made of this fund between the Preston National Bank and the City Savings Bank now exists; that various payments to said banks have been ordered and have been made; that by the final decree, from which the Preston National Bank, and the Union Trust Company, receiver, have appealed, complainant was charged with interest at the rate of $2\frac{1}{2}$ per cent. per annum on the proceeds from the sale of bonds, which interest amounted January 16, 1905, to $13,820.67; that there remained in the hands of the trust company for distribution at said date $32,756.14, and that distribution of this fund was ordered (1) to the Detroit United Railway $8,131.45, being interest at the rate of 5 per cent. per annum on the sums of money expended in completing the said railway; (2) the balance equally between the receiver of the City Savings Bank and the Preston National Bank. No sum was allowed to the Union Trust Company for its services, nor, at the hearing, was an allowance claimed.

The controversy here involves the right of the Detroit United Railway to be paid out of the fund interest upon its expenditures, the right of the Union Trust Company to an item of $1,250 charged Andrews as a commission upon the extension of a loan, its right to delay applying funds received from sale of bonds to the Andrews loan

until sufficient money had been received to pay the loan in full, and its liability to pay interest upon funds in its possession.

It is contended by the Preston National Bank, in which contention the receiver of the City Savings Bank joins, that the Detroit United Railway should not have been allowed any interest out of the fund; that the Union Trust Company should have been charged interest at the legal rate upon funds coming into its hands, should be disallowed the item of $1,250, and should be made to apply the proceeds of the sales of bonds as they were received to the payment of the Andrews note.

*Russel & Campbell,* for complainant.

*Geer & Williams* and *H. R. Martin,* for defendant Preston National Bank.

*Brennan, Donnelly & Van De Mark,* for defendant Detroit United Railway.

*Bowen, Douglas, Whiting & Murfin,* for defendant Union Trust Company.

OSTRANDER, J. *(after stating the facts).* 1. It is asserted as reason for denying payment of interest to the Detroit United Railway that provision for prompt reimbursement had been made by the deposit of the 250 bonds with the Union Trust Company, and that the account for expenditures was not, in any event, interest bearing. I quote from the brief:

"If the Detroit United Railway was not reimbursed promptly, why should the damages, that is, the interest upon its expenditures, be paid out of the fund derived from the sale of the bonds, that is, by the assignees of the bonds, who were in no way at fault? Certainly the damages (interest) should be paid by the party at fault."

And again:

"There is another sufficient reason why it should not be allowed interest. * * * The rule is firmly estab-

lished that interest can never be allowed on an unsettled or an unliquidated account without an agreement, express or clearly implied, and it is not allowable as damages if there has been no final understanding as to how much is to be paid."

The contract obligation of the vendors of the railway properties was to complete the specified work; failing in which, the vendee was empowered to proceed with said work, " charge the same to said vendor and guarantors, and shall be entitled to take from the hands of the trustee sufficient bonds to fully cover the cost of such completion." The allowance of interest in the decree is supported by the contract, explained by the situation with reference to which it was made. The properties purchased by the Detroit United Railway were sold at the price of completed properties and the purchase price was paid. The obligation to complete the properties rested primarily upon the vendor and guarantors. It was their possible default, in whole or in part, against which the deposit of bonds protected the purchaser. The immediate and the anticipated result of the sellers' default was the advancement by the purchaser of funds necessary to complete the properties. Whether the money was used to pay for work and labor or for materials, it was for the use and benefit of an advancement of money to the sellers, was due and payable immediately, and carried interest from the date of each advancement. That the account for these advancements was unliquidated in the sense that they were required to be proved or admitted, is true. They were none the less, each of them, advancements of money to the persons who provided the indemnity and as proved, or admitted, were debts due when made. *Reid* v. *Rensselaer Glass Factory*, 3 Cow. (N. Y.) 393; *Rensselaer Glass Factory* v. *Reid*, 5 Cow. (N. Y.) 587. The Detroit United Railway could be indemnified only by immediate repayment of moneys expended. It must be considered, in view of all the circumstances, that the contract words " to fully cover the cost of such completion " mean interest as well as ad-

vancements. *Woerz* v. *Schumacher*, 161 N. Y. 530, 37 App. Div. 374. If it could be said that each advancement which was made operated as an immediate transfer of an equal interest in the bonds, it would also be noticed that the bonds bore interest at the rate allowed by the court.

The letter written by the receiver to the president of the Detroit United Railway indicates an understanding that it was intended that payment should be made in bonds, and that interest at the rate provided in the bonds would be equivalent to payment in bonds. It cannot be said that the effect of the correspondence was a waiver by the Detroit United Railway of its right to be paid interest or the equivalent thereof, or an undertaking on the part of the receiver to pay interest. The bonds were sold, by consent of all interested parties, and presumably for the benefit of appellants, at an agreed price plus accrued interest. Changing the deposit from bonds to money interfered in no manner with the relations of the railway company to the fund provided for its indemnity. Unless done by consent of interested parties or pursuant to an order of court, this fund could not be disbursed by the Union Trust Company except at its peril. It is said in the brief for appellants that, "if it had allowed expenditures not properly chargeable against the bonds, the vendor and guarantors, and later the appellants, could have compelled it to account therefor." It was on April 19, 1902, that the Detroit United Railway took upon itself the completion of the properties, and it appears by its answer in this cause that at the time the bill of complaint was filed it was still proceeding with that work. Appellants complain that it did not earlier apply to be reimbursed, saving thus the interest charge to the indemnity fund. The right of appellants to complain is based upon their succession to the fund subject to the indemnity to be paid, and it is assumed in the complaint made that the Detroit United Railway is alone at fault. Since the bill of complaint was filed, all of the parties in interest have been in

court with full knowledge of what was claimed by other parties, the condition and the custody of the fund. An examination of the record discloses no good reason for saying that one party rather than another should be held responsible for unnecessary delays if any occurred. The decree, with respect to the allowance of interest to the Detroit United Railway, is affirmed, with costs against the appellants.

2. If the trust company had applied the proceeds of sales of collateral as received, to payment of the principal and interest of the note according to the terms of the note, the balance in its hands would have been $2,621.33 instead of $1,304.76, as reported. It is said that it did in fact so credit receipts, but that a part of its claim against Andrews was an item of $1,250, a commission charged him for the renewal of a note of $100,000, February 5, 1902, and charged to the account of collateral on March 18, 1902. Deducting this item leaves a balance of $1,371.33, which is $66.57 more than the amount reported. The evidence is that on or about February 5, 1902, Mr. Andrews directed the charge for the commission to be made, and that a letter and statement of account were sent to him. The account so presented was:

"February 5, 1902.

"Frank C. Andrews
            "To Union Trust Company, Dr.
" For interest on $100,000 note to date Feb. 5, 1902, December 5 to February 5, 4½% ------------------------------- $764 40
" For commission as agreed for 4 mos. extension of $100,000 note ---------------------------------------------- 1,250 00

            "Total---------------------------------------------$2,014 40 "

The accompanying letter read as follows:

" *Dear Sir:* In accordance with your instructions, we have prepared and hand to you herewith a bill of the interest on the installment of your note which became due today, and for the commission of this company for the renewal thereof, the total amount being $2,014.40. We would be greatly appreciative of your check in payment thereof."

No reply was received. The matter was carried along until March 18th, at which time it was charged up to the account of Mr. Andrews and paid out of the proceeds of the collateral. At that time no bonds had been sold, but the proceeds of sale of the stock of the Detroit Journal Company were received on March 18, 1902. The record leaves it uncertain whether the $100,000 referred to is a part or installment of the $400,000 lent December 5, 1901. By counsel for appellants the fact is assumed, and by counsel for complainant such assumption is declared to be wholly unsupported by evidence. The fact may be immaterial. It does appear that the $400,000 loan was evidenced by a note which drew 4½ per cent. interest, but when it became due is not shown. It is not seriously claimed by complainant that the commission charged, treated as exacted for the use of money lent, and added to the interest contracted to be paid, did not amount to the taking of usurious interest upon the $100,000 note. The question debated is whether, the debtor having waived the right to do so, appellants may object. That appellants are neither parties or privies to the contract to pay the loan or the interest thereon is clear. They are, however, privies to the arrangement by which the collateral was deposited as security, and as, admittedly, their beneficial interest is diminished by the amount of the commission charged by complainant, and as the exaction was an illegal one, they claim the right to require that the usurious charge be written off by complainant and the fund to be distributed be that much increased.

It is contended, further, that the agreement to pay the commission is separate and distinct from the agreement to pay the loan and the interest reserved in the note, and that the collateral was held as security for repayment of the loan only. On the part of complainant, it is urged that the bill of complaint set out the sum of money remaining in its hands, that the answers of appellants admitted the fact to be as stated, that upon filing a bill of interpleader no issue can be made as to a further or other fund

or sum than is stated in the bill. To this it must be replied that the bill is not strictly a bill of interpleader, and has not been in the proceedings taken so regarded. The averments of the bill make it clear that defendants are not rival claimants of a fund in the hands of complainant. The prior rights of the Detroit United Railway to the proceeds of certain of the bonds is stated. The beneficial interest of appellants to so much of the fund as remained after satisfying prior demands, including that of complainant, is made clear. Appellants are therefore directly interested in the question of how much the custodian of the fund paid to itself. The bill prays for an accounting. True, the answers of appellants admit, upon information and belief, the allegation concerning the amount on hand for distribution. It must be held, however, that the relations of complainant to the fund and to the assignees thereof are such that it is under obligations to submit its actions in the premises to investigation. It has done so and the facts, already stated, have been made to appear. It remains to determine whether appellants may, because of what is so made to appear, object to the item charged for commission. This does not involve, necessarily, any question concerning the enforcement of the statute against usury. The holder of the collateral pledged as security for a debt, having undertaken in a court of equity to account to other creditors of its debtor who have succeeded by assignment to the beneficial interest in the collateral, subject to the payment of the debt secured, owes a duty to show that it has taken from the fund no greater sum than was secured by the deposit. In such a case, it being made to appear that the debt secured, with the interest reserved, has been paid, and that a further sum, which, treated as interest, is usurious, which is not a charge connected with the debt secured, which it is claimed the debtor, by a separate and distinct agreement made after his assignment of the collateral, promised to pay, has been added to the debt and, without direction of the debtor, paid out of the fund, the complainant

has failed in proof of right to subject the fund to such charge. It is found, therefore, that the sum remaining in the hands of complainant after payment of its debt was $2,621.33, and the decree will be so modified.

3. After Andrews' debt to complainant was paid, and from June 2, 1902, to March 11, 1903, complainant received, at brief intervals, money from sales of securities hereinbefore described. It made no considerable disbursement until December 30, 1903. On June 1, 1903, an order of court was made, reciting "that the fund in complainant's hands as set forth in its bill of complaint do remain in its custody until the termination of this suit, or until the further order of this court." Its custody of the fund was at all times lawful, its duty was to pay upon proper demand, it owed no duty to invest. Uniformly, while making proper credits upon its books, it placed the money received with its general funds and loaned it at interest, during the entire period, at the rate of 6 per cent. per annum. It is in evidence that banks in the city of Detroit pay upon deposits of public moneys a rate of 2 per cent. per annum, payable monthly; that they pay upon deposits left for three months 3 per cent.; and that, where no express agreement to pay interest is made, none is paid. The position of counsel for appellants is thus stated in the brief:

"We have never objected, and do not now object, to its (complainant's) custody of the fund. If we had objected to the fund remaining in its custody, we would have asked the court to order it to bring the money into court. What we object to is its use of the money for its own profit."

Again:

"We contend that the Union Trust Company should be charged interest at the rate of 5 per cent. per annum upon proceeds of the bonds sold after payment of said loan, from the date of receipt of proceeds of each sale to December 30, 1903, and upon the respective balances in its possession, after the several payments made by it under orders of the court to the date of each payment."

Complainant does not contend that it should not pay interest. It does contend that the rate of 2½ per cent., fixed by the court, should not be increased. It is therefore unnecessary to enter upon a discussion of the duties and liabilities of the various classes of trustees, or to consider any liability of complainant beyond the limits of the demand made by appellants. Plainly, complainant was not a stakeholder. It is equally clear that the fund was impressed with some of the characteristics of a trust fund and that complainant was the trustee. To hold that the complainant had the right to speculate for its own profit with the fund is to relax an elementary rule resting in sound public policy and rarely, if ever, varied to meet the facts of particular or peculiar cases.

The argument that complainant might have kept the money by itself as a mere custodian of the fund, or have paid it into court, in which cases no profit whatever would have accrued, has never, so far as I have examined the authorities, been admitted to diminish recovery of the profit actually received by the trustee, or, as an alternative, the legal rate of interest. Complainant did use the fund to its profit, and the only question presented is whether, it appearing that it received more than 5 per cent. interest, a decree that it account for 5 per cent., or for a less rate, shall be entered. It is claimed by counsel for complainant that it is impossible to determine the exact profit made, but that it was less than 5 per cent. It is pointed out, also, that it was allowed no compensation. The record contains no evidence upon the subject of proper compensation. A contention made for complainant, which at first blush appears to have some merit, viz.: that appellants knew, or are presumed to have known, about the use made of the money and the facts concerning the going rate of interest upon funds deposited in banks and used as these moneys were used, and are therefore estopped to contend for a higher rate of interest, is, after all, essentially unsound. Mere noninterference does not imply a waiver of legal rights even if the receiver of

the City Savings Bank could expressly waive them. Under the circumstances, this court feels compelled to apply the rule requiring complainant to account for interest upon the fund and at the rate of 5 per cent., that being the minimum statute rate of interest. No computation of interest is undertaken. Counsel will undoubtedly agree upon a computation of the amount to be paid over by complainant in accordance with this opinion, and the decree below will be modified in accordance therewith, and a final decree will be entered in this court.

Appellant Preston National Bank will recover from complainant the costs of this appeal.

McALVAY, MONTGOMERY, HOOKER, and MOORE, JJ., concurred.